*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE NEWTON, Personal Representative of the
ESTATE OF PAUL NEWTON,

        Plaintiff-Appellant,

v

MCLAREN PORT HURON, DOROTHY DUDAS,
R.N., and KURT BRINKER, P.T.,

        Defendants-Appellees.

UNPUBLISHED
December 22, 2025
9:28 AM

No. 373235
St. Clair Circuit Court
LC No. 23-002367-NH

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

K. F. KELLY, P.J., *(dissenting).*

I respectfully dissent and would affirm the trial court's order granting summary disposition in favor of defendants, McLaren Port Huron ("McLaren"), Dorothy Dudas, R.N., and Kurt Brinker, P.T., on the basis of Pandemic Health Care Immunity Act ("PHCIA"), MCL 691.1471 *et seq.* Defendants' reactions and actions in this case were part of their response to the COVID-19 pandemic, and thus warrant immunity.

As set forth by the majority, this case arises from an incident during the early months of the COVID-19 pandemic where the decedent, Paul Newton ("Newton"), fell and sustained fatal injuries during the course of receiving medical treatment at McLaren. As this Court has previously explained, the Legislature enacted the PHCIA following the issuance of several executive orders that contained liability immunity provisions for licensed healthcare professionals and healthcare facilities providing medical services in support of this state's response to the COVID-19 pandemic. See *Franklin v McLaren Flint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 4-5 (explaining the executive responses preceding the enactment of the PHCIA). MCL 691.1475 provides:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those

-1-

injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility.

Under MCL 691.1477, "[t]he liability protection provided by [the PHCIA] applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020."

Newton presented to McLaren complaining of respiratory issues and shortness of breath, which are common symptoms of COVID-19. Newton initially tested negative for COVID-19, but medical records note that he was still suspected to potentially have it. He was then placed in a unit where COVID-19 patients were also being treated. Although Newton was assessed as a high fall risk and his room was equipped with fall-mitigation devices such as a call light and chair alarm, his door was closed to reduce the spread of COVID-19, hindering the ability of the staff to constantly supervise him.

In addition, defendants' reaction to Newton's injury was limited based on their response to the COVID-19 pandemic. Dudas testified that when she found Newton on the floor, his chair alarm was going off. She opined that people were not able to answer the chair alarm because "there was so much going on with the COVID, that there wasn't anybody that was available to answer it right away" and that there were "[s]o many people in rooms with the door closed doing things for people in isolation." Dudas also testified that the staffing shortages as a result of the pandemic prevented her from getting timely assistance from the rapid-response team. Notably, this case presents a similar situation to the one articulated in *Skipper-Baines* as being supportive of immunity. See *Skipper-Baines v Bd of Hosp Managers for Flint*, ___ Mich App at ___; ___ NW3rd ___ (2024) (Docket No. 365137); slip op at 4 ("For example, if an unrelated emergency was not timely dealt with because hospital staff were overwhelmed with COVID-19 patients, there might be immunity."). Defendants' reactions and actions in this case were part of their response to the COVID-19 pandemic, and thus warrant immunity. See *Franklin*, ___ Mich App at ___; slip op at 8 (noting that the statute covers a defendant "if it provided any healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic").

Here, there is a sufficient connection between COVID-19 and the healthcare services provided by defendants to support their claim of immunity and the facts support that defendants "provide[d] health care services in support of this state's response to the COVID-19 pandemic . . . ." MCL 691.1475. The trial court did not err in granting defendants' motion for summary disposition, and I would affirm.

/s/ Kirsten Frank Kelly